**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MICHAEL G.,

                                    Plaintiff,

v.                                                                    5:20-CV-605
                                                                      (CFH)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                              OF COUNSEL:

Legal Aid Society of Mid-New York, Inc.    ELIZABETH KRUPAR, ESQ.
221 South Warren St., Ste. 310
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration             CANDACE H. LAWRENCE, ESQ.
625 JFK Building
15 New Sudbury Street
Boston, Massachusetts 02203
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION & ORDER[1]

        Plaintiff Michael G.[2] brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("Commissioner" or

_____

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 4.

[2]  In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision & Order will identify plaintiff by first name and last initial.

"defendant") denying his application for supplemental security income benefits.  See Dkt. No. 1.  Plaintiff moves for a finding of disability, and the Commissioner cross moves for a judgment on the pleadings.  See Dkt. Nos. 11, 14.  For the reasons set forth below, plaintiff's motion is denied, and the Commissioner's motion is granted.

## I. Background[3]

Plaintiff was born on May 9, 1965.  See T. 149, 340.  He attended special education classes until he left school in the eighth grade.  See id. at 45-46.  Plaintiff currently lives with his wife but reported that there were recent periods when he was homeless.  See id. at 44, 178, 340.  On June 29, 2017, plaintiff protectively filed an application for supplemental security income benefits, alleging disability beginning on February 1, 2017.  See id. at 149-154.  His claim was denied initially on September 12, 2017.  See id. at 67-86.  Plaintiff requested a hearing, and a hearing was held on April 5, 2019, before Administrative Law Judge ("ALJ") Robyn L. Hoffman.  See id. at 35-66.  On May 2, 2019, the ALJ rendered an unfavorable decision.  See id.  at 7-25.  On May 13, 2010, the Appeals Council denied plaintiff's request for review, making the findings the final determination of the Commissioner.  See id.  at 1-6.  Plaintiff commenced this action on June 2, 2020.  See Dkt. No. 1.

## II. Discussion

### A.  Standard of Review

---

[3]  References to the administrative transcript will be cited as "T." and page citations will be to the page numbers in the bottom right-hand corner of the administrative transcript.  All other citations to documents will be to the pagination generated by the Court's electronic filing system, CM/ECF, and will reference the page numbers at the documents' header, and not the pagination of the original documents.

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . .  [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805

F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); see Venio v. Barnhart, 213 F.3d 578, 586 (2d Cir. 2002).

## B.  Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. at § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. at § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently  engaged in substantial gainful activity.

4

If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  See id. at 1180 (citing Berry, 675 F.2d at 467).

## C.  RFC Determination

RFC is defined as "'what an individual can still do despite his or her limitations . . .  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'"  Pardee v.

Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)).  "In making a [RFC] determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'"  Hendrickson v. Astrue, No. 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("S.S.R.") 85-15, 1985 WL 56857, at *6).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

"In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole,' even if that finding does not perfectly correspond with any of the opinions of cited medical sources."  Tanya S. v. Saul, 410 F. Supp. 3d 436, 445 (N.D.N.Y. 2019) (quoting Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). However, it is well established that ALJs are not medical professionals; therefore, ALJs are "not qualified to assess a claimant's RFC on the basis of bare medical findings."  Id. (internal quotation marks and citation omitted); see Charland v. Comm'r of Soc. Sec., No. 1:13-CV-492 (GTS/WBC), 2016 WL 1117515, at *2 (N.D.N.Y. Mar. 22, 2016) ("[A]n ALJ cannot assess a plaintiff's RFC based on the ALJ's own interpretation of the

medical evidence.").  "In other words, there must be substantial evidence to support a finding of functional limitation(s) or lack thereof."  Tanya, 410 F. Supp. 3d at 445.

"Before assessing the claimant's RFC, the ALJ must consider the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  Knighton v. Astrue, 861 F. Supp. 2d 59, 66 (N.D.N.Y. 2012) (citing S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996)). This requires the ALJ to "make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch."  Walters v. Astrue, No. 11-CV-640 (VEB), 2013 WL 598331, at *3 (N.D.N.Y. Feb. 15, 2013); 20 C.F.R. §§ 404.1513(a)(2)(i), 404.1569a(a).  "The claimant's RFC can be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy only after the function-by-function analysis has been completed."  Knighton, 861 F. Supp. 2d at 66 (citation omitted); see Walters, 2013 WL 598331, at *3 ("Once the function-by-function analysis is completed, the RFC may be expressed in terms of exertional levels of work, e.g., sedentary, light, medium, heavy, and very heavy.").

## D.  The ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since June 29, 2017, his application date.  T. 12.  The ALJ found at step two of the sequential evaluation that plaintiff had the severe impairments of posttraumatic stress disorder, antisocial personality disorder, bipolar disorder, schizoaffective disorder, bilateral knee osteoarthritis, and lumbosacral degenerative disc disease.  See id. at 12-13.  At step

7

three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 13-15.  Before reaching step four, the ALJ concluded that plaintiff retained the RCC "to perform less than the full range of light work."  Id. at 15-18.  Specifically, the ALJ found that plaintiff could understand and follow simple instructions and directions, perform simple tasks independently, maintain attention and concentration for simple tasks, and regularly attend to a routine and maintain a schedule.  See id. at 15.  The ALJ also found that plaintiff could "relate to and interact appropriately with all others to the extent necessary to carry out simple tasks."  Id.  Further, the ALJ found that plaintiff could handle simple, repetitive work-related stress, in that he could make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that did not require him to supervise or manage the work of others.  See id.  At step four, the ALJ determined that plaintiff had no past relevant work.  See id. at 18.  Considering plaintiff's RFC, age, education, and work experience, and applying the Medical-Vocational Guidelines at 20 CFR Part 404, Subpart P, Appendix 2, the ALJ determined that plaintiff could perform unskilled jobs that exist in significant numbers in the national economy.  See id. at 19.  Therefore, the ALJ determined that plaintiff "has not been under a disability, as defined in the Social Security Act, since June 29, 2017, the date the application was filed."  Id.

## E.  Arguments

8

Plaintiff argues that the ALJ made several errors in her RFC determination, due to (1) improperly assessing the opinion evidence regarding plaintiff's mental impairments, particularly the opinion of non-examining state consultant Dr. Mark Tatar; (2) improperly substituting her lay opinion for the medical opinion evidence related to plaintiff's physical impairments; (3) failing to adequately consider plaintiff's subjective testimony regarding his symptoms and the resulting functional limitations; and (4) failing to consult a vocational expert ("VE") at step five.  See Dkt. No. 11 at 13-29.

Defendant argues that substantial evidence supports the ALJ's RFC determination and her ultimate disability determination, and that the ALJ did not err in her assessment of the medical opinion evidence or the evidence regarding plaintiff's symptoms.  See Dkt. No. 14 at 7-27.

### III. Analysis

 It is the province of the ALJ to resolve genuine conflicts in the record.  See Veino, 312 F.3d at 588.  However, the Commissioner need not "reconcile explicitly every shred of medical testimony."  Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts between the objective medical record, medical opinion evidence, and hearing testimony by assigning the greatest weight to that evidence that she deemed most consistent with plaintiff's overall treatment record and activities.  In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record.  See Matta, 508 F. App'x. at 56 (although the ALJ's conclusion did not perfectly correspond with any of the opinions of medical

sources, the ALJ was entitled to weigh all of the evidence available to make an RFC

finding that was consistent with the record as a whole).  In light of the ALJ's analysis of

plaintiff's medical history, the relevant medical opinions, and plaintiff's activities of daily

living, this court concludes that her RFC determination was supported by substantial

evidence, as summarized below.


### A.  Review of Medical Opinion Evidence

An ALJ's review of medical evidence of record for claims filed on or after March

27, 2017—such as plaintiff's claim here—is governed by 20 C.F.R. § 404.1520c,

entitled "[h]ow we consider and articulate medical opinions and prior administrative

medical findings for claims filed on or after March 27, 2017."  The new regulations

provide that the Social Security Administration:

> will not defer or give any specific evidentiary weight,
> including controlling weight, to any medical opinion(s) or
> prior administrative medical finding(s), including those from
> your medical sources. When a medical source provides one
> or more medical opinions or prior administrative medical
> findings, we will consider those medical opinions or prior
> administrative medical findings from that medical source
> together using the factors listed in paragraphs (c)(1) through
> (c)(5) of this section, as appropriate. The most important
> factors we consider when we evaluate the persuasiveness of
> medical opinions and prior administrative medical findings
> are supportability (paragraph (c)(1) of this section) and
> consistency (paragraph (c)(2) of this section). We will
> articulate how we considered the medical opinions and prior
> administrative medical findings in your claim according to
> paragraph (b) of this section.

20 C.F.R. § 404.1520c(a). The factors provided in paragraph (c) are: (1) supportability;

(2) consistency; (3) relationship with claimant; (4) specialization; and (5) other factors.

See id. at § 404.1520c(c)(1)-(5).  Paragraph (b) of Section 404.1520c provides the

Social Security Administration's "articulation requirements" with respect to how it

"articulates [its] consideration of medical opinions and prior administrative medical

findings."  Id. at § 404.1520c(b).  Of particular relevance, the updated regulations

explain that

> The factors of supportability (paragraph (c)(1) of this section)
> and consistency (paragraph (c)(2) of this section) are the
> most important factors we consider when we determine how
> persuasive we find a medical source's medical opinions or
> prior administrative medical findings to be. Therefore, we will
> explain how we considered the supportability and
> consistency factors for a medical source's medical opinions
> or prior administrative medical findings in your determination
> or decision. We may, but are not required to, explain how we
> considered the factors in paragraphs (c)(3) through (c)(5) of
> this section, as appropriate, when we articulate how we
> consider medical opinions and prior administrative medical
> findings in your case record.

Id. at § 404.1520c(b)(2). A "medical opinion" is defined, in relevant part, as

> a statement from a medical source about what you can still
> do despite your impairment(s) and whether you have one or
> more impairment-related limitations or restrictions in the
> following abilities: . . .
> (ii) Your ability to perform the mental demands of work
> activities, such as understanding; remembering; maintaining
> concentration, persistence, or pace; carrying out instructions;
> or responding appropriately to supervision, co-workers, or
> work pressures in a work setting.

20 C.F.R. § 404.1513(a)(2)(ii).

### B.  The ALJ's Assessment of Plaintiff's Mental Functional Limitations Was Supported by Substantial Evidence

Ms. Jessica Njoku, a Licensed Master Social Worker[4] ("LMSW"), saw plaintiff for

---

[4]  A LMSW is not an acceptable medical source, but an ALJ may consider their opinion regarding a claimant's functional limitations.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5850 (Jan. 18, 2017).

counseling sessions between two and four times per month, dating back to October 8, 2017.  <u>See</u> T. at 743.  On December 18, 2018, Ms. Njoku completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Mental)," setting out her opinion of the functional limitations related to plaintiff's diagnosed PTSD and antisocial personality disorder.  <u>Id.</u> at 739-43.  Ms. Njoku opined that plaintiff had extreme limitations in his ability to follow work rules, relate to co-workers, deal appropriately with the public, use proper judgment, interact with supervisors and managers, and deal with work stress.  <u>Id.</u> at 739.  The form defined "extreme" limitations as having "no useful ability to function in this area."  <u>Id.</u>  In the accompanying narrative, Ms. Njoku opined that plaintiff has issues with groups of people and becomes angry quickly, does not "cope well with situations[,] and is always thinking negative thoughts about how others look at him."  <u>Id.</u>

She also opined that plaintiff had extreme limitations in his ability to make judgments on simple work-related decisions, to understand, remember, and carry out complex instructions, and to make judgments on complex work-related decisions.  <u>See</u> T. at 740.  She further opined that plaintiff had marked limitations in her ability to understand, remember, and carry out simple instructions.  <u>See</u> <u>id.</u>  She based this on her finding that plaintiff "has some memory issues and at times struggles with comprehension."  <u>Id.</u>  Ms. Njoku further opined that plaintiff had extreme limitations in his ability to behave in an emotionally stable manner and relate predictably in social situations.  <u>See</u> <u>id.</u>  She explained that plaintiff has mood instability and can be aggressive in situations when he feels threatened.  <u>See</u> <u>id.</u>

Based on these functional limitations, Ms. Njoku opined that plaintiff is likely to be off-task for sixty to eighty percent of the workday, and is incapable of handling any work stress.  See T. at 740.  She further opined that plaintiff is likely to experience good days and bad days due to his mental impairments and estimated that he is likely to be absent more than four workdays per month.  See id. at 741.

In Ms. Nwoku's opinion, plaintiff had marked limitations in performing activities of daily living, extreme limitations in maintaining social functioning, and deficiencies of concentration, persistence, and pace as a result of his mental impairments.  See T. at 741-42.  She noted that plaintiff shops and attends appointments at times of the day that many people are not around, and does not go outside on hot days because of his anger issues.  See id. at 742.  She described plaintiff as avoiding spending time with many people, and wearing headphones when he leaves his home.  Id.  He also avoids social functions unless his wife is with him.  See id.  Ms. Nwoku concluded her opinion by noting that plaintiff "doesn't have focus, has memory issues, and severe irritability that would not be safe for the work place."  Id. at 743.

The ALJ listed several reasons why she found Ms. Nwoku's opinion of plaintiff's mental functional limitations to be less persuasive than that of Dr. Tatar.  First, she noted that despite plaintiff's documented issues with depression, anxiety, and anger management, Ms. Nwoku's counseling notes generally describe him as "cooperative," and having a normal appearance, average eye contact, and normal cognition, insight, and judgment.  T. at 17; see id. at 18.  More compelling are the multiple treatment notes from Dr. Bill Hines, who managed plaintiff's psychiatric medication.  See id. at 18, 532, 554, 562.  The ALJ noted that Dr. Hines found that plaintiff's mental health symptoms

were "quite stable," and that the current medication regimen had "really made a big difference for him." Id. at 18, 834. Dr. Hines' longitudinal treatment notes reflect a gradual improvement in plaintiff's mental health symptoms dating back to at least February 2018, when his treating physician gradually increased the dosage on his psychiatric medication. See id. at 545, 554, 562.

Dr. Jeanne Shapiro performed a consultative psychiatric examination of plaintiff on August 4, 2017. See T. at 340-344. Prior to the examination, plaintiff refused to discuss his employment history, and initially told Dr. Shapiro that he could not recall his mental health treatment history. See id. at 340. Plaintiff refused to answer most questions, and appeared to be "actively hallucinating, talking to somebody named Charlie." Id. at 341. Plaintiff eventually reported that he had been diagnosed with bipolar disorder and obsessive-compulsive disorder, and that he was illiterate. See id. He also stated that he was unable to consistently dress, bathe, and groom himself, could only cook noodles, and did not do any cleaning, laundry, or shopping. See id. at 342-43.

During the examination, plaintiff continued to be uncooperative, and Dr. Shapiro rated his manner of relating, social skills, and overall presentation as "poor." T. at 342. Plaintiff showed a flat affect with no expression of emotion. See id. Dr. Shapiro opined that plaintiff's attention and concentration were "moderately impaired" due to the hallucinations, but she was unable to evaluate plaintiff's intellectual functioning. Id. She opined that plaintiff's recent and remote memory skills were moderately-severely impaired due to cognitive deficits and psychiatric symptoms, in light of plaintiff's apparent inability to recall some longitudinal and short-term information. See id.

14

Based on her examination results, Dr. Shapiro opined that plaintiff had marked limitations in a number of functional areas: understanding, remembering, or applying complex directions and instructions; using reasoning and judgment to make work-related decisions; interacting adequately with supervisors, coworkers, and the public; sustaining concentration and performing a task at a consistent pace; and regulating his emotions, controlling his behavior, and maintaining his well-being.  <u>See</u> T. at 343.  She further opined that plaintiff appears to have moderate limitations understanding, remembering, or applying simple directions and instructions, and mild-moderate limitations sustaining an ordinary routine and regular attendance at work, as well as being aware of normal hazards and taking normal precautions.  <u>See id.</u>

In finding Dr. Shapiro's opinion to be less persuasive than that of Dr. Tatar, the ALJ emphasized plaintiff's lack of cooperation during the examination, that "naturally" influenced the consultative examiner's opinion regarding plaintiff's demeanor, ability to interact with others, and prognosis.  <u>See</u> T. at 17.  She also noted that plaintiff was much more cooperative in other settings, including the physical consultative examination conducted on the same day, and exhibited less severe mental health symptoms during these documented encounters.  <u>See id.</u> at 17, 346-347,  469, 480, 545.

State Agency psychological consultant Dr. Mark Tatar reviewed plaintiff's then-current medical records and issued an opinion dated September 7, 2017.  <u>See</u> T. at 76-78.  Dr. Tatar rated plaintiff across four categories: understanding and memory; concentration and persistence; social interaction; and adaptation.  <u>See id.</u>  In Dr. Tatar's opinion, plaintiff was not significantly limited in his ability to remember locations and

work-like procedures, but had moderate limitations in his ability to understand and remember very short and simple instructions and detailed instructions.  See id. at 76. He also opined that plaintiff had no significant limitations in his ability to carry out very short and simple instructions, but was moderately limited in his ability to carry out detailed instructions and to maintain attention and concentration for extended periods. See id. at 76-77.  Dr. Tatar also opined that plaintiff was moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  See id. at 77.  He further opined that plaintiff was moderately limited in his ability to: work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions; and perform at a consistent pace without an unreasonable number and length of rest periods.  See id.  Dr. Tatar found no significant limitations in plaintiff's ability to sustain an ordinary routine without special supervision, or to make simple work-related decisions.  See id.

With regard to social interaction, Dr. Tatar opined that plaintiff was moderately limited in his ability to: interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers and peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness.  See T. at 77.  Dr. Tatar further opined that plaintiff had no significant limitations in his ability to ask simple questions or request assistance.  See id.

With regard to adaptation, Dr. Tatar opined that plaintiff was not significantly limited in his ability to: set realistic goals or make plans independently of others; be

aware of normal hazards and take appropriate precautions; or travel to unfamiliar places and use public transportation.  See T. at 78.  He found moderate limitations in plaintiff's ability to respond appropriately to changes in the workplace, and to set realistic goals or make plans independently of others.  See id.

In reaching his opinion of plaintiff's mental functional limitations , Dr. Tatar recognized that his findings were less restrictive than the opinion of consultative examiner Dr. Shapiro.  See T. at 72, 74.  However, he concluded that Dr. Shapiro's opinion overestimated plaintiff's mental limitations due to plaintiff's failure to provide accurate information during the examination.  See id. at 74.  Dr. Tatar noted that this lack of cooperation was documented during other psychiatric evaluations, and was consistent with one evaluator's 2005 opinion that plaintiff "uses the system to get what he needs in a way that he doesn't have to work . . . he uses psychiatric symptoms in the same way – to get what he needs from the system."  Id. at 72.  Taking this potential unreliability and the available medical record into account, Dr. Tatar opined that

> it appears that [plaintiff] would be able to perform at least simple tasks and sustain a pace and routine.  His ability to deal with co-workers and the public would be reduced, but adequate to handle brief and superficial contact.  His ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting.  [Plaintiff] exhibits some difficulty with adaptation but is able to cope with basic changes and make routine decisions.

Id. at 73.

The ALJ identified several reasons for finding Dr. Tatar's opinion more persuasive than those of Dr. Shapiro and Ms. Njoku.  First, she noted that Dr. Tatar supported his conclusions with a "detailed narrative" with cites to the available treatment

record.  T. at 18.  She also concluded that Dr. Tatar had the benefit of an accurate

representation of plaintiff's educational, work, and medical background that was not

available to Dr. Shapiro.  See id.  Finally, the ALJ found Dr. Tatar's opinion most

consistent with plaintiff's testimony that he was capable of assisting his wife with

shopping and chores, could use public transportation, and experienced improvement

from when he took his psychiatric medication in accordance with his doctor's orders.

See id. at 18, 47, 57, 63.

     Plaintiff contends that the ALJ erred by (1) relying on a non-examining

consultant's opinion, and (2) assigning the greatest weight to a 2017 opinion that was

rendered stale by subsequent treatment records.  See Dkt. No. 11 at 13-20.  Neither

argument is persuasive.

     In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both

examining and non-examining State agency medical consultants because such

consultants are qualified experts in the field of social security disability.  See Frye ex.

rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency

medical consultant constitutes expert opinion evidence which can be given weight if

supported by medical evidence in the record.") (summary order); Christy v. Comm'r of

Soc. Sec., No. 5:13-CV-1552 (GTS/WBC), 2015 WL 6160165, at *10 (N.D.N.Y. Oct. 20,

2015) ("[A]n ALJ may rely on the opinions of non-examining medical experts."); Miller v.

Comm'r of Soc. Sec., 1:13-CV-1388 (GLS/ESH), 2015 WL 1383816, at *8 (N.D.N.Y.

Mar. 25, 2015) ("State agency medical consultants are recognized experts in evaluation

of medical issues in disability claims under the [Social Security] Act.  Accordingly, their

opinions generally constitute substantial evidence." (internal citations omitted)).  Such

reliance is appropriate where the consultant's opinion is supported by other record evidence.  See Swan v. Astrue, No. 09-CV-486-S (MAT), 2010 WL 3211049, at *5 (W.D.N.Y. August 11, 2010) ("State agency medical consultants are qualified experts in the evaluation of disability claims and as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Plaintiff further contends that the ALJ improperly relied upon Dr. Tatar's opinion even though he had never examined plaintiff.  See Dkt. No. 11 at 9.  To be sure, "[t]he Second Circuit has recognized that '[t]he opinions of non-examining medical personnel cannot, in themselves and in most situations, constitute substantial evidence to override the opinion of a treating source.'"  Worthy v. Berryhill, No. 3:15-CV-1762 (SRU), 2017 WL 1138128, at *6 (D. Conn. Mar. 27, 2017) (quoting Schisler v. Sullivan, 3 F.3d 563, 570 (2d Cir. 1993)).  However, an ALJ may assign more weight to the opinions of non-examining sources where there is record evidence to support such a determination. See Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) (citing Diaz v. Shalala, 59 F.3d 307, 313 n. 5 (2d Cir. 1995) ("[T]he regulations . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record.").

Here, the ALJ established a consistency between Dr. Tatar's opinion and plaintiff's mental health treatment history, as well as portions of plaintiff's own testimony regarding his functional limitations.  See T. 17-18.  By doing so, the ALJ relied on the same medical evidence that influenced her decision to discount the opinions of Dr. Shapiro and Ms. Nwoku, and her determination was thus supported by substantial evidence.  See Camille, 652 F. App'x at 28;  Diaz v., 59 F.3d at 313 n. 5.

The court is likewise unpersuaded by plaintiff's secondary argument that Dr. Tatar's opinion is stale because it was issued in September 2017.  An ALJ is not required to receive an updated report whenever new evidence is available, unless the additional evidence may change the state medical experts' opinions.  See Stottlar v. Colvin, 5:15-CV-0340 (GTS), 2017 WL 972108, at *7 (N.D.N.Y. Mar. 10, 2017) (noting that "a medical consultant's failure to consider the complete medical record does not necessarily compel rejection of the medical consultant's opinions 'or the ALJ's finding relying thereon.'").  By itself, "[a] gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion." Majdandzic v. Comm'r of Soc. Sec., No. 17-CV-1172 (FPG), 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018); rather, only a "meaningful change" in a plaintiff's condition during the gap will do so.  Lamar v. Comm'r of Soc. Sec., No. 1:18-CV-829 (JJM), 2020 WL 548376, at *3 (W.D.N.Y. Feb. 4, 2020).  A consultative opinion such as Dr. Tatar's may become stale "if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision."  Maxwell H. v. Comm'r of Soc. Sec., 1:19-CV-0148 (LEK/CFH); 2020 WL 1187610, at *5 (N.D.N.Y. March 12, 2020) (internal quotation marks and citation omitted).

Plaintiff has not identified any deterioration or other significant change in plaintiff's mental health in the "more than 15 months of additional treatment" between Dr. Tatar's opinion and the ALJ's decision.  Dkt. No. 11 at 17.  Indeed, the ALJ cited Dr. Hines' treatment records that documented gradual improvement in plaintiff's symptoms since at least February 2018.  See T. at 18, 532, 554, 562.  Therefore, the ALJ was not

required to obtain an updated opinion, and could rely on Dr. Tatar's opinion to the extent that it was consistent with the record evidence.  See Stottlar, 2017 WL 972108, at *7.

Plaintiff further contends that all three mental health opinions supported greater restrictions with regard to social interaction, and argues that the ALJ's conclusion that plaintiff could "relate and interact with others to the extent necessary to carry out simple tasks" was not supported by substantial evidence.  T. at 15.  This court disagrees, and finds that the ALJ identified substantial evidence to support her RFC determination related to social interaction.

With regard to social interaction, Dr. Tatar opined that plaintiff's "ability to deal with co-workers and the public would be reduced, but adequate to handle brief and superficial contact."  T. at 73.  He further opined that plaintiff's ability to tolerate and respond appropriately to supervision would be reduced, but "adequate to handle ordinary levels of supervision in the customary work setting."  Id.

Two regulatory definitions are relevant to this analysis.  First, unskilled work requires little or no judgment to do simple duties that can be learned on the job in a short period of time.  See 20 C.F.R. § 416.968.  The ALJ's RFC limiting plaintiff to "simple tasks" was thus a restriction to unskilled work.  T. at 15.  Second, "the primary work functions in the bulk of unskilled work relate to working with things" rather than people.  20 C.F.R. Pt. 404, Subpt. P, app. 2, § 202.000(g).  Consistent with this regulatory approach, multiple courts have considered a limitation to unskilled work to adequately accommodate a claimant's need for only "brief and superficial" social contact.  See Amos v. Comm'r of Soc. Sec., No. 1:18-CV-1367 (WBC), 2020 WL 1493888, at *5-6 (W.D.N.Y. Mar. 27, 2020) (RFC determination of unskilled light work

requiring occasional interaction with the public and coworkers was supported by state agency consultant's opinion that plaintiff's "ability to deal with coworkers and the public would be somewhat reduced, but adequate, to handle brief and superficial contact."); Pascal T. v. Berryhill, No. 5:17-CV-1347 (MAD), 2019 WL 316009, at *11 (N.D.N.Y. January 24, 2019) (ALJ's determination that plaintiff can "relate and interact with others to the extent necessary to carry out simple tasks" was consistent with state agency consultant's opinion that plaintiff was limited to "brief and superficial contact with others" and had "a reduced ability to tolerate and respond appropriately to supervision although adequate to handle ordinary levels of supervision in a customary work setting."). Therefore, the ALJ's RFC determination that limited plaintiff to unskilled work sufficiently addressed plaintiff's need for brief and superficial social interaction.

### C.  The ALJ's Assessment of Plaintiff's Physical Functional Limitations Was Supported by Substantial Evidence

Dr. Richard Weiskopf conducted a consultative physical examination of plaintiff on August 4, 2017.  See T. at 346-353.  Prior to the examination, plaintiff provided his medical history including treatment for back pain, chronic left knee pain, and high blood pressure.  See id. at 346.  Plaintiff also provided a summary of his psychiatric treatment history, including auditory hallucinations.  See id.

During the examination, Dr. Weiskopf noted that plaintiff generally avoided eye contact but was otherwise in no acute distress.  See T. at 348.  He showed a normal gait, and was able to walk on his heels and toes without difficulty.  See id.  He required no assistive devices, and did not require help changing for the examination, getting on or off the examination table, or rising from a chair.  See id.  He showed full flexion,

extension, lateral flexion bilaterally, and full rotary movement bilaterally in the cervical spine, but reduced flexion in the lumbar spine.  See id.  Plaintiff had full range of motion in the shoulders, elbows, forearms, and wrists bilaterally.  See id.  He had reduced range of motion in the knees and hips.  See id.  Dr. Weiskopf found intact hand and finger dexterity, and full grip strength in both hands.  See id.

Based on his examination, Dr. Weiskopf opined that plaintiff had no limitations with regard to sitting, standing, or walking.  See T. at 350.  He opined that plaintiff had "moderate to severe" limitations in bending, lifting, climbing, and carrying.  Id.  Plaintiff also has good use of his hands with regard to strength and fine motor activities.  See id.

State Agency consultant Dr. Roy Reynolds reviewed plaintiff's then-current medical records and Dr. Weiskopf's consultative examination report and issued an opinion dated August 17, 2017.  See T. at 74-76.  Dr. Reynolds opined that plaintiff could occasionally lift or carry up to twenty pounds and was capable of frequently lifting or carrying up to ten pounds.  See id. at 75.  He estimated that plaintiff could stand and/or walk for a total of about six hours during an eight-hour workday, and could sit for a total of six hours in an eight-hour workday.  See id.  He opined that plaintiff had no limits on his ability to push and pull.  See id.  Dr. Reynolds further opined that plaintiff could frequently balance, but could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and could occasionally stoop, crouch, and crawl.  See id.

The ALJ found the opinions of both Dr. Weiskopf and Dr. Reynolds to be "persuasive to the extent they are consistent with one another and supported by the objective medical evidence of record."  T. at 16.  In particular, she found their opinions that plaintiff did not have significant limitations for sitting, standing, walking, and using

his hands to be consistent with the consultative examination results, as well as the

August 17, 2017 imaging reports prepared by Dr. Lawrence S. Liebman depicting "mild"

and "moderate" degenerative changes in plaintiff's spine and no significant bony

abnormalities in plaintiff's knee.  Id. at 351-352.  The ALJ also found these opinions

consistent with the function report prepared by plaintiff's wife and plaintiff's own

description of his daily activities.

The ALJ applied the same standard for those portions of the Weiskopf and

Reynolds opinions that she discounted.  In particular, the ALJ found their opinions that

plaintiff had "moderate to severe" limitations in bending, lifting, climbing, and carrying

and other postural activities to be inconsistent with the record evidence.  T. at 16.  This

included evidence that plaintiff was able to vacuum, wash dishes, clean the bathtub,

rake leaves, and perform other "labor work" around the house, as well as "work out" at a

gym.  Id. at 182, 480, 484, 834.  By relying on this evidence of plaintiff's daily activities,

in addition to the examination notes that showed full strength in the extremities, full

range of motion in the cervical spine, shoulders, elbows, forearms, and ankles as well

as Dr. Leibman's imaging notes describing only mild to moderate degenerative changes

in the spine, the ALJ marshaled substantial evidence to support her physical RFC

determination.  Id. at 16, 349, 351-352, 682.


### D.  The ALJ's Assessment of Hearing Testimony and Subjective Reports Was Supported by Substantial Evidence

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must

take the plaintiff's reports of pain and other symptoms into account.  Genier v. Astrue,

606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must "'carefully consider' all the evidence

presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  Del Carmen Fernandez v. Berryhill, No. 18-CV-326, 2019 WL 667743 (JPO), at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01, 2016 WL 1020935, at *14169-70 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term.  SSR 16-3p, 2016 WL 1020935, at *14167.  Instead, symptom evaluation tracks the language of the regulations, and involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work.'"  Barry v. Colvin, 606 F. App'x 621, 623 (2d Cir. 2015) (summary order) (quoting 20 C.F.R. § 404.1529(a) (additional citations omitted).

If the objective medical evidence does not substantiate the claimant's symptoms, "the ALJ must consider the other evidence . . . ."  Cichocki v. Astrue, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order) (citation omitted).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following

symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination.  See Cichocki, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination.  See id.; see also Del Carmen Fernandez, 2019 WL 667743 at *11 (citing Rousey v. Comm'r of Soc. Sec., 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'"  Cichocki, 534 F. App'x at 76 (quoting Mongeur, 722 F.2d at 1040).

As part of the RFC analysis, the ALJ reviewed plaintiff's testimony and statements made to his health care professionals regarding his symptoms and activities. See T. at 15-18.   Although plaintiff refused to complete a function report as part of his application, his wife provided a summary of his daily activities while he was living with her.  See id. at 178-85.

The ALJ noted a number of discrepancies that prompted her to discount portions of plaintiff's testimony as inconsistent with the broader record.  For example, plaintiff testified that he provided minimal assistance with household chores such as laundry

and cooking.  See T.  at 44.  His wife indicated that he was able to prepare simple

meals for himself, and was able to vacuum, wash dishes, clean the bathtub, rake the

yard, and perform "labor work" around the home.  Id. at 180.  Plaintiff testified that he

was only able to stand for about fifteen minutes before needing a break, had to rest

after walking approximately two blocks, and could only sit in one position for about thirty

minutes.  See id. at 48.  However, the ALJ noted that the record included repeated

references to plaintiff working out at a gym as a means to relieve stress.  See id. at 182,

480, 484, 834.  She also considered plaintiff's physical examinations that showed no

difficulties with sitting, walking, or standing, imaging results that depicted only mild

degenerative changes in the spine and knees, and physician notes indicating that

plaintiff's back and knee pain was controlled with medication.  See id. at 18, 350-352,

688, 694, 723.

Similarly, the ALJ found that plaintiff's testimony regarding his mental health

limitations were inconsistent with the broader record.  See T. at 17-18.  For example,

plaintiff testified that he had racing thoughts, could not sit still or relax, and experienced

auditory hallucinations.  See id. at 15, 40.  He also testified that he was "very angry,"

cannot "take a joke" and lacks "people skills."  Id. at 15-16, 54.  In discounting these

reports, the ALJ considered the medical evidence that plaintiff's symptoms had been

increasingly controlled with medication as his dosage was adjusted and plaintiff became

more compliant in taking it, and conclusions that were consistent with plaintiff's own

reports that his psychiatric symptoms had improved with consistent medication.  See id.

at 15, 531, 545, 562, 834.  The ALJ also noted plaintiff's failure to provide any medical

history information to Dr. Shapiro during his psychiatric consultative examination,

despite providing a lengthy medical history during his physical examination on the same day.  See id. at 17, 340, 346-347.

Based on the multitude of factors considered by the ALJ, she provided substantial evidence to support her assessment of plaintiff's testimony.  Beyond the evidence itself, plaintiff also makes the technical argument that the ALJ improperly utilized "boilerplate" language to discount his testimony when she stated that plaintiff's "allegations have been found to affect his ability to work only to the extent they can reasonably be accepted as consistent with the objective and other evidence of the record."  T. at 25.  Even though courts have described such language as "gibberish insusceptible to meaningful judicial review," it does not require remand so long as the ALJ has also provided substantial evidence to support her assessment of plaintiff's testimony.  See Crofoot v. Comm'r of Soc. Sec., No. 1:12-CV-521 (GLS/ESH), 2013 WL 5493550, at *11 (N.D.N.Y. Sept. 30, 2013).  Here, the ALJ provided substantial evidence by explaining the evidence related to plaintiff's medical treatment, daily activities, and imaging reports that prompted her to discount plaintiff's testimony regarding his functional limitations; therefore, remand is not required.

### E.  Step Five

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'"  McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (quoting Brault v. Soc. Sec. Admin., 683 F.3d 443, 445 (2d Cir. 2012)).  In this case, the ALJ did not consult with a vocational expert, and

instead relied solely on the Medical-Vocational Guidelines to determine whether there

was a significant number of "light work" jobs in the national economy that plaintiff could

perform. T. at 19.  Plaintiff argues that this was error because it failed to adequately

account for plaintiff's non-exertional limitations, particularly his need to be limited to

"brief and superficial contact" with the public and coworkers.  Dkt. No. 11 at 28-30.  The

Court finds this argument unpersuasive.

The Court notes that an ALJ is required to consult with a vocational expert "[i]f a

claimant has nonexertional limitations that 'significantly limit the range of work permitted

by his exertional limitations[.]'"  Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010)

(quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986)).  "[T]he 'mere existence of a

nonexertional impairment does not automatically . . . preclude reliance on the [Medical-

Vocational] guidelines.'"  Id. at 410-11 (quoting Bapp, 802 F.2d at 603).  As discussed

above, the Court finds that the ALJ's analysis regarding the opinion evidence and the

resulting RFC are supported by substantial evidence.  The ALJ's decision includes

adequate explanation for his findings on plaintiff's alleged limitations, and plaintiff has

not established further limitations than those included in the RFC.

As previously explained, the ALJ's findings regarding plaintiff's difficulties with

social interaction were consistent with the level of interaction with supervisors,

coworkers and the public that is required to complete most forms of unskilled work.  See

Amos, 2020 WL 1493888, at *5-6; Pascal T., 2019 WL 316009, at *11.  Where a

plaintiff's social interaction limitation "does not significantly limit the range of unskilled

work, . . . reliance on the Grids in such an instance is appropriate."  Scott v. Berryhill,

No. 3:17-CV-211 (JAM), 2018 WL 1608807, at *7 (D. Conn. March 31, 2018) (internal

quotation marks and citations omitted); <u>see</u> <u>also</u> <u>Bombard-Senecal v. Comm'r of Soc.</u>

<u>Sec.</u>, No. 8-13-CV-649 (GLS), 2014 WL 3778568, at *4 (N.D.N.Y. July 31, 2014)

(holding that, "because the ALJ determined that [the plaintiff] c[ould] perform the full

range of unskilled light work that requires only occasional interaction with others and no

climbing of scaffolds, his reliance on the Medical[-]Vocational guidelines was

appropriate.").  Thus, the Court finds that the ALJ did not err in relying on the Medical-

Vocational Guidelines, and that the ALJ's step five determination is supported by

substantial evidence.  Remand is therefore not required on this basis.


### IV. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that Michael G.'s motion (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt.

No. 14) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-

Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: June 16, 2021
    Albany, New York


Christian F. Hummel
U.S. Magistrate Judge